## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| CHRISTOPHER G. HURN and JULREI ENTERPRISES LLC, | ) ) ) | |
| Plaintiffs, | ) ) ) | Civil Action No.: 1:25-cv-06840-MLB |
| v. | ) ) | |
| COMMUNITY BANKSHARES, INC., COMMUNITY BANK & TRUST – WEST GEORGIA, PHOENIX LENDER SERVICES, LLC, and THOMAS FINANCIAL GROUP, INC., | ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

### DEFENDANTS' BRIEF IN SUPPORT OF
### MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT

Defendants Community Bankshares, Inc. ("CBI"), Community Bank & Trust – West Georgia ("CB&T"), Phoenix Lender Services, LLC ("Phoenix"), and Thomas Financial Group, Inc. ("TFG") (collectively, "Defendants"), by counsel, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, hereby file this Brief in Support of Defendants' Motion to Dismiss Plaintiffs' Amended Complaint, stating as follows:

### INTRODUCTION

Like the original Complaint in this case, Plaintiffs' Amended Complaint suffers from various pleading defects that require the claims to be narrowed before

the parties proceed to discovery and further litigation. For example, several of the claims alleged by Plaintiffs are asserted against all Defendants, but the facts alleged in support of those claims do not provide grounds for a claim against every Defendant. Many of the claims asserted by Plaintiffs must be dismissed in part for that reason. Plaintiffs also assert certain damages that are not recoverable for their claims as a matter of law. For these reasons, and as explained further below, several of Plaintiffs' claims must be dismissed in part.

**SUMMARY OF FACTUAL ALLEGATIONS**[1]

The Defendants are an affiliated group of banking and financial services companies operating primarily in LaGrange, Georgia. (Amended Complaint, Dkt. #21 ("Am. Comply.") ¶¶ 9-12, 18.) CBI owns TFG, Phoenix, and CB&T. (Am. Compl. ¶ 9.)

On April 1, 2024, Plaintiffs—Mr. Hurn ("Hurn") and his Puerto Rican shell company, JulRei Enterprises ("JulRei")—entered into an Independent Contractor and Consulting Agreement (the "Consulting Agreement") with CBI. (Am. Compl. ¶¶ 8, 30.) Under the Consulting Agreement, Hurn was to serve as one of CBI's top executives, which required Hurn to interface with directors, regulatory bodies, and strategic partners, in addition to managing staff and advising on internal matters such

---

[1] Defendants recite these allegations from Plaintiffs' Amended Complaint for purposes of the Motion to Dismiss, but do not concede their truth and expressly deny all such allegations.

as strategic direction, operational efficiency, corporate governance, marketing, product development, revenue strategy, capital planning, and related executive functions. (Am. Compl. ¶¶ 31, 33.)

In addition to serving as an executive, Hurn (a) made an $800,000 loan to CBI pursuant to a promissory note dated September 26, 2024 (the "Note"); and (b) purchased 600,000 shares of CBI common stock, then valued at $2.00 per share. (Am. Compl. ¶¶ 34, 39.)

Beginning in December 2024, Hurn, through the consulting agreement with JulRei, served as President of CBI and was on the Board of Directors of CBI. (Am. Compl. ¶ 42.) On April 16, 2025, Plaintiffs entered into an Amended and Restated Independent Contractor and Consulting Services Agreement (the "Amended Consulting Agreement") with CBI and Phoenix. (Am. Compl. ¶ 45.[2]) Pursuant to the Amended Consulting Agreement, Plaintiffs' compensation was increased significantly, and Hurn became CEO of CBI as well as the President and CEO of Phoenix. (Am. Compl. ¶¶ 32, 47.) Hurn also began to serve as the Interim President

---

[2] Plaintiffs allege that they entered into the Amended Consulting Agreement with "Defendants." (Am. Compl. ¶ 45.) However, the Amended Consulting Agreement is between Plaintiffs, on one hand, and on the other hand CBI and Phoenix. *See* Amended Consulting Agreement, attached hereto as Exhibit A. Plaintiffs appear to admit this in the next paragraph of the Complaint by referring instead to the "Contracting Defendants," which Plaintiffs define as including CBI and Phoenix. (Am. Compl. ¶¶ 13, 46.)

of TFG, beginning in May 2025. (Am. Compl. ¶ 43.) Hurn did not have any job duties with respect to CB&T. (Am. Compl. ¶¶ 55, 58.)

In October 2025, negotiations over Hurn's exit from CBI broke down, and CBI removed Hurn from his roles with CBI, Phoenix, and TFG. (Am. Compl. ¶¶ 65-67, 72.) CBI removed Hurn from his roles for cause based on his failure to perform essential duties of his job, pursuant to the Amended Consulting Agreement. (Am. Compl. ¶¶ 73-74.)

## STANDARD OF REVIEW

When considering a motion to dismiss, the court must accept the factual allegations set forth in the complaint as true, but is not required to extend that assumption of truth to conclusory allegations. *Doe v. Samford Univ.*, 29 F.4th 675, 685 (11th Cir. 2022) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The goal of the Court's inquiry, at the motion to dismiss stage, is to determine whether the plaintiff has offered sufficient factual allegations to "cross[] the line between possibility and plausibility" and state a claim to relief that is "plausible on its face." *Id.* at 685-86.

Where a plaintiff refers to documents in his complaint, the documents are central to his claim, the documents' contents are not in dispute, and the defendant attaches the documents to its motion to dismiss, it is proper for a court to consider those documents. *Fin. Sec. Assur., Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1284 (11th

Cir. 2007); *Patel v. Specialized Loan Servicing, LLC*, 904 F.3d 1314, 1318 n.3 (11th Cir. 2018). A document is "central" to a claim if the plaintiff "would ultimately have to offer a copy of the [document] to prevail under any conceivable theory of its case." *Fin. Sec. Assur., Inc.*, 500 F.3d at 1285.

<u>**ARGUMENT AND CITATIONS OF AUTHORITY**</u>

**I.    Plaintiffs' Fraudulent Inducement and Negligent Misrepresentation Claims Must Be Dismissed as to Phoenix and CB&T.**

A plaintiff asserting a claim for fraudulent inducement must show "a false representation by a defendant, scienter, intention to induce the plaintiff to act or refrain from acting, justifiable reliance by plaintiff, and damage to plaintiff." *JPMorgan Chase Bank, N.A. v. Durie*, 350 Ga. App. 769, 771 (2019). The "same principles apply to both fraud and negligent misrepresentation cases;" the only "real distinction" is whether the defendant knew the alleged misrepresentations were false at the time they were made. *Trico Environmental Services, Inc. v. Knight Petroleum Company*, 357 Ga. App. 826, 831-32 (2020). The allegedly false representation must be made by the defendant against whom the claim is brought. *JPMorgan Chase Bank*, 350 Ga. App. at 771-72 (dismissal of a fraudulent inducement claim was appropriate where the plaintiff failed to allege that the remaining defendants in the case made any of the alleged statements). The plaintiff must establish each element; the "failure to establish even one of these elements entitles the defendant to summary adjudication." *Pinnock v. Kings Carlyle Club Apartments, LLC*, 348 Ga. App. 72,

75 (2018). Moreover, plaintiffs must state "the circumstance constituting fraud or mistake…with particularity." O.C.G.A. § 9-11-9(b). Where a plaintiff fails to plead fraud with particularity, and it appears that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief, dismissal is appropriate. *See Hedquist v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 284 Ga. App. 387, 394 (2007).

Plaintiffs have failed to allege with particularity any false representation by either CB&T or Phoenix, instead resorting to "shotgun" style pleading in which Plaintiffs allege that the "Defendants" collectively made misrepresentations to Plaintiffs, without specificity as to which Defendant supposedly made which statement(s).[3] (*See* Am. Compl. ¶¶ 109-117.) The substance of the alleged misrepresentations also fails to implicate CB&T or Phoenix. The alleged misrepresentations asserted in support of Plaintiffs' fraudulent inducement and negligent misrepresentation claims are that (i) Plaintiffs would receive compensation, in the form of a bonus tied to CBI's income, for overseeing TFG, and (ii) that the necessary paperwork would be finalized to reflect that compensation.

---

[3] Where a plaintiff "lumps all of the defendants together without providing any supporting factual allegations as to the role each defendant played," the pleading fails to "give the defendants adequate notice of the claims against them and the grounds upon which each claim rests," and therefore should be dismissed as a shotgun pleading. *Hagans v. View Valley Home Loan*, No. 1:24-cv-02100, 2024 WL 4250843, at *7 (N.D. Ga. Aug. 28, 2024) (citing *Weiland v. Palm Beach County Sheriff's Office*, 792 F.3d 1313, 1321-23 (11th Cir. 2015)).

(Am. Compl. ¶¶ 48, 110, 119.) Neither of those alleged misrepresentations relates in any way to CB&T or Phoenix, and Plaintiffs do not plead any other fact showing that either CB&T or Phoenix made any false representation whatsoever. Because Plaintiffs have failed to plead a fundamental element of their fraudulent inducement and negligent misrepresentation claims against CB&T and Phoenix with the particularity required by Georgia law, and because the Amended Complaint reveals no alleged set of facts that would entitle Plaintiffs to relief from CB&T or Phoenix on those claims, Counts III and IV should be dismissed as to CB&T and Phoenix.

## II.    Count I Must Be Dismissed as to Any Claims Based on the Consulting Agreement.

In Count I, Plaintiffs purport to assert claims against both CBI and Phoenix for breach of contract and breach of the implied covenant of good faith and fair dealing. Plaintiffs base those claims on both the Consulting Agreement and the Amended Consulting Agreement. (Am. Compl. ¶ 91.) However, those claims must be dismissed to the extent they are based on the Consulting Agreement because (i) the Consulting Agreement was expressly superseded by the Amended Consulting Agreement; (ii) Phoenix is not a party to the Consulting Agreement; and (iii) the alleged breach relates only to the Amended Consulting Agreement.

Plaintiffs entered into the Consulting Agreement with CBI in April 2024. (Am. Compl. ¶ 30.) Then in April 2025, Plaintiffs entered into the Amended Consulting Agreement with CBI and Phoenix. (Am. Compl. ¶ 45.) The Amended

Consulting Agreement "expressly replaced the April 1, 2024, Consulting Agreement." (Am. Compl. ¶ 46.) Therefore, Plaintiffs no longer have any rights under the Consulting Agreement, nor does CBI have any remaining responsibilities under that contract. *See Bulford v. Verizon Business Network Services, Inc.*, 970 F. Supp. 2d 1363, 1369-70 (N.D. Ga. 2013) (finding that a merger clause "extinguishes any claim…based on a promise or agreement that predates" the agreement containing the merger clause). Plaintiffs also cannot allege a claim for breach of the Consulting Agreement against Phoenix, which was not a party to the Consulting Agreement and (according to Plaintiffs' allegations) did not even exist at the time the Consulting Agreement was executed (Am. Compl. ¶¶ 30, 38.) *See TForce Logistics East, LLC v. BH Transportation and Consulting, LLC*, No. 1:20-CV-02858, 2021 WL 5029426, at \*2 (N.D. Ga. July 14, 2021) (holding that the plaintiff's breach of contract claim must be dismissed as to a defendant that was not a party to the contract at issue).

The alleged breach of contract is based on alleged termination of the Amended Consulting Agreement "without providing the ninety (90) days' written notice required for termination without cause." (Am. Compl. ¶ 94.) That alleged breach can only be based on the 2025 Amended Consulting Agreement, not the 2024 Consulting Agreement, because the 2024 Consulting Agreement had only a 30-day notice period for termination without cause. (Am. Compl. ¶ 49.) The Amended Consulting

8

Agreement changed the notice period for termination without cause from 30 days to 90 days. *Id.*

For all these reasons, Plaintiffs cannot assert a breach of contract claim based on the Consulting Agreement, and Count I should be dismissed to the extent that it purports to assert such a claim.[4]

### III.    Count V Must Be Dismissed as to all Defendants Except TFG.

Under Georgia law, an unjust enrichment claim requires the plaintiff to show that there is no legal contract, but that the plaintiff provided a benefit to the defendant, did not receive compensation for that benefit, and the failure to compensate the plaintiff renders the transaction unjust. *See, e.g.*, *Ridgeline Capital Partners, LLC v. MidCap Financial Services, LLC*, 340 F. Supp. 3d 1364, 1372 (N.D. Ga. 2018); *Sitterli v. Csachi*, 344 Ga. App. 671, 673 (2018) ("Unjust enrichment is an equitable concept and applies when as a matter of fact there is no legal contract").

Here, Plaintiffs allege that they conferred the following benefits on the Defendants: (i) "executive leadership and management services across the CBI enterprise;" (ii) "developing and launching the Phoenix lender-services platform;" (iii) "stabilizing CB&T's operations, increasing consolidated assets…and creating

---

[4] Plaintiffs' claim against Phoenix for breach of the covenant of good faith and fair dealing also fails because Plaintiffs only assert that claim against CBI. (Am. Compl. ¶ 96)

[] profitability;" (iv) "providing additional management and executive leadership for TFG;" and (v) "contributing personal capital totaling two million dollars." (Am. Compl. ¶ 125.) However, Plaintiffs were compensated for their work for CBI and Phoenix, and for their alleged capital contributions, and Plaintiffs allege that they had no responsibilities for CB&T. Thus, Plaintiffs have failed to state a claim for unjust enrichment against any defendant other than TFG.

### A. Plaintiffs Were Compensated for Their Work for CBI and Phoenix.

Plaintiffs have asserted their unjust enrichment claim (Count V) against all Defendants. In support of that claim, Plaintiffs allege that they conferred benefits on CBI and Phoenix including "executive leadership and management services across the CBI enterprise" and "developing and launching the Phoenix lender-services platform." (Am. Compl. ¶ 125.) However, Plaintiffs' own allegations reveal that they were compensated for any benefit conferred on CBI and Phoenix under the terms of the Consulting Agreement and the Amended Consulting Agreement. (*See, e.g.*, Am. Compl. ¶¶ 31, 34, 39, 46, 50.)

Under the Consulting Agreement, Plaintiffs were compensated for "provid[ing] consulting services and centralized management services to CBI" and "exercising senior-level oversight in favor of CBI." (Am. Compl. ¶¶ 31-32.) Under the Amended Consulting Agreement, Plaintiffs "provid[ed] services to the Contracting Defendants [CBI and Phoenix]" and "function[ed] as the executive with

responsibility to act as the Contracting Defendants' President and CEO," and performed other similar high-level duties across the CBI group of companies, including Phoenix. (Am. Compl. ¶¶ 46, 50.) Because these alleged benefits are covered by the Consulting Agreement and Amended Consulting Agreement, and Plaintiffs received significant monthly payments in exchange for those benefits, Count V should be dismissed as to CBI and Phoenix. (Am. Compl. ¶¶ 32, 47.)

### B.    Plaintiffs Were Compensated for Their Alleged Capital Contributions.

Plaintiffs' allegations also fail with respect to the alleged contributions of personal capital because (i) $800,000 of that contribution is expressly covered by the Note; and (ii) Plaintiffs received shares of CBI in exchange for the remaining $1.2 Million of the alleged capital contributions. (Am. Compl. ¶¶ 34-35, 39.) Because Plaintiffs allege that the Note is a "binding written agreement," they cannot base a claim for unjust enrichment on the contribution that was subject to the Note. (Am. Compl. ¶ 100.) With respect to Plaintiffs' alleged $1.2 million capital contribution, Plaintiffs admit that they received shares of CBI's common stock in exchange for that investment. (Am. Compl. ¶ 39.) Thus, Plaintiffs have failed to show that they were not compensated for their capital contributions, which is a required element of an unjust enrichment claim. Thus, Plaintiffs' unjust enrichment claims fail with respect to any of the alleged capital contributions.

11

### C.    Plaintiffs' Contradictory Allegations Cannot Support a Claim Against CB&T.

The unjust enrichment claim also must be dismissed as to any benefit allegedly conferred on CB&T because Plaintiffs expressly allege that they had no responsibilities for CB&T. (Am. Compl. ¶¶ 55, 58) ("Plaintiffs were not in charge of, nor a part of operations for, CB&T," and "[d]espite CB&T not being under Plaintiffs' control…"). Yet in Count V, Plaintiffs attempt to take credit for "[s]tabilizing CB&T's operations, increasing consolidated assets…and creating [] profitability." (Am. Compl. ¶ 125.) These fundamentally inconsistent allegations "effectively cancel one another out" and should be disregarded by the Court when considering a Motion to Dismiss. *See Stafford v. Grifols International, S.A.*, No. 1:16-CV-3997, 2017 WL 5201799, at *2 n.1 (N.D. Ga. Apr. 24, 2017); *Blacklidge v. Anderson*, No. 5:24-CV-00740, 2025 WL 2413053, at *6 (N.D. Ala. Aug. 20, 2025) (collecting cases and noting that "[c]ourts need not accept as true 'internally inconsistent factual claims'"). When disregarding the allegation that Plaintiffs were responsible for "[s]tabilizing CB&T's operations, increasing consolidated assets…and creating [] profitability," Count V does not contain any allegation that supports an unjust enrichment claim as to CB&T. Therefore, Count V must be dismissed as to CB&T.

12

**IV.    Plaintiffs' Quantum Meruit Claims Must Be Dismissed as to CBI, CB&T, and Phoenix.**

The elements of a claim for quantum meruit are similar to those for unjust enrichment: a plaintiff must show that he performed services valuable to the defendants, that he did so at the request of the defendants or that the defendants knowingly accepted the services, the failure to compensate the plaintiff for the services would be unjust, and that the plaintiff expected compensation when it rendered the services. *See Perry Golf Course Dev., LLC v. Housing Authority of City of Atlanta*, 294 Ga. App. 387, 394 (2008). For similar reasons to those explained above, Plaintiffs' quantum meruit claim must be dismissed as to CBI, Phoenix, and CB&T.

In support of their quantum meruit claims, Plaintiffs allege that they provided services "for the benefit of Defendants" between approximately August 2023 and October 2025. (Am. Compl. ¶ 129.) Those services allegedly included "[d]esigning, staffing, leading, and managing the Phoenix lender-service platform," "overseeing CB&T's SBA and USDA lending programs," "[o]verseeing and leading the consolidated operations across the CBI enterprise," "serving as interim President for TFG," "[s]ecuring and maintaining regulatory agency confidence, enterprise profitability, and capital adequacy," and "leading the strategic initiatives that increased Defendants' consolidated assets." (Am. Compl. ¶ 130.)

13

As explained above, Plaintiffs' services with respect to Phoenix and CBI, in addition to "maintaining regulatory agency confidence," "leading [] strategic initiatives," and similar responsibilities are covered by the Consulting Agreement and the Amended Consulting Agreement, under which Plaintiffs received substantial compensation. (Am. Compl. ¶¶ 31-33, 46-47, 50.) Thus, a quantum meruit claim is not available as to Phoenix and CBI. And again, Plaintiffs' contradictory allegations with respect to CB&T leave Plaintiffs without any basis for their claim that they performed services "valuable to" CB&T. (Am. Compl. ¶¶ 55, 58.)

For the foregoing reasons, Plaintiffs' claim for quantum meruit fails as to CBI, Phoenix, and CB&T because Plaintiffs have not alleged that they provided any services that were not covered by the compensation they received under the Consulting Agreement and Amended Consulting Agreement.

## V. The Damages Available to Plaintiffs on Their Breach of Contract Claims are Limited.

In Counts I and II, Plaintiffs assert various breach of contract claims against CBI and Phoenix. (Am. Compl. ¶¶ 89-108.) However, Plaintiffs' alleged damages on the breach of contract claims are limited, and some of the damages claimed by Plaintiffs are not available as a matter of law.

### A.    Plaintiffs' Damages for Breach of the Amended Consulting Agreement are Limited to 90 Days of Pay.

First, in Count I, Plaintiffs assert that the damages suffered due to the alleged breach of contract include "reputational harm, unpaid compensation, bonuses, the value of Plaintiffs' equity, and consequential losses." (Am. Compl. ¶ 98.) However, in an action for breach of an employment agreement that contained a 90-day notice provision, a "plaintiff is limited to 90 days, to his actual contractual loss, as a measure of liquidated damages." *Mayor & City of Douglasville v. Hildebrand*, 175 Ga. App. 434, 436 (1985); *see also Insurance Industry Consultants, LLC v. Alford*, 294 Ga. App. 747, 749-50 (2008) (where the contract provided for 180 days' notice of termination, and the plaintiff worked for 49 of those days, it was proper to award him damages "for the remaining 131 days").

Here, Plaintiffs allege a breach of the provision of the Amended Consulting Agreement's requiring 90 days' notice for termination without cause. (Am. Compl. ¶¶ 49, 94.) Plaintiffs cannot recover for "reputational harm" on a breach of contract claim, and they have not alleged a breach of any contractual provision related to "bonuses [or] the value of Plaintiffs' equity." Thus, Plaintiffs' damages are limited to the 90 days' pay to which they would have been entitled had they received the notice of termination to which they allegedly were entitled.

15

**B.    Plaintiffs Fail to Allege any Right to Repurchase or Redemption of Stock.**

In Count II, Plaintiffs allege that CBI breached the terms of the Note by "[f]ailing to redeem or repurchase Hurn's six hundred thousand shares of CBI common stock at fair market value." (Am. Compl. ¶ 103.) But the Note does not have any relation to the 600,000 shares of CBI common stock that Hurn purchased for $1.2 Million in November 2024. (Am. Compl. ¶¶ 38-39; Note, attached hereto as Exhibit B.) In fact, Plaintiffs do not allege that they had any contractual right to redemption or repurchase of the stock purchased by Hurn. Instead, Plaintiffs appear to claim that this right arose out of the settlement negotiations between Plaintiffs and CBI in October 2025. (Am. Compl. ¶ 82.) But Plaintiffs acknowledge that the settlement negotiations did not result in an agreement and that Defendants "expressly rescind[ed] the proposed separation framework that the parties had been negotiating." (Am. Compl. ¶ 73.) Because Plaintiffs have not alleged any facts showing the existence of an agreement giving them a right to repurchase or redemption of the 600,000 shares purchased by Hurn in November 2024, any claim for breach of contract based on the alleged failure to redeem or repurchase those shares is insufficient as a matter of law. Count II must therefore be dismissed to the extent it is based on any such alleged right to redemption or repurchase of shares.

16

## CONCLUSION

WHEREFORE, Defendants hereby request that their Motion to Dismiss be granted and that the Court issue an Order dismissing the following claims with prejudice:

- Count I, as to any claims based on the Consulting Agreement;

- Count III, as to Phoenix and CB&T;

- Count IV, as to Phoenix and CB&T;

- Count V, as to Phoenix, CBI, and CB&T; and

- Count VI, as to Phoenix, CBI, and CB&T.

Respectfully submitted this 30th day of April 2026.

/s/ *John S. Gibbs III*
John S. Gibbs III
GA Bar No. 154250
evan.gibbs@troutman.com
Grace M. Goodheart
GA Bar No. 689828
grace.goodheart@troutman.com

TROUTMAN PEPPER LOCKE LLP
600 Peachtree St. NE, Suite 3000
Atlanta, GA 30308
Tel: (404) 885-3093
Fax: (404) 885-3900

*Counsel for Defendants*

## **CERTIFICATION OF COMPLIANCE**

I hereby certify that the foregoing has been prepared in 14-point Times New Roman font in accordance with Local Rule 5.1(C).

/s/    *John S. Gibbs III*
John S. Gibbs III
Counsel for Defendants

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was filed on April 30, 2026, using the PACER e-filing system, which will serve a copy on all counsel of record.

/s/    *John S. Gibbs III*
John S. Gibbs III
Counsel for Defendants